[Crim. No. 7207.   Second Dist., Div. Three.   Nov. 23, 1960.]

THE PEOPLE, Respondent, v. EARL STEPHEN
ELLEDGE, Appellant.

Earl Stephen Elledge, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FORD, J.—The appellant was convicted in a nonjury trial of the crime of burglary in the first degree and it was found to be true that he had previously been convicted of the crimes of grand theft and violation of section 503 of the Vehicle Code, each being a felony. He was sentenced to imprisonment in the state prison for the term prescribed by law. His appeal is from the judgment and from the order denying his motion for a new trial.[1]

At the trial, the appellant was represented by counsel of his own choice. The notice of appeal was filed in propria persona. The application of the appellant for the appointment of counsel to represent him on this appeal was denied because, as will appear herein, a review of the record disclosed that no benefit could accrue to the appellant or the court by such an appointment. He has filed an opening and a closing brief.

The prosecution offered the testimony of one witness, Sheila Mary Liwicki. The appellant testified in his own behalf and produced as a witness Lila Brewer, who testified briefly. Mrs. Liwicki said that on October 14, 1959, she lived in a one-room apartment on the third floor at 457 South Bonnie Brae in Los Angeles. At about 3:30 o'clock in the morning she saw the appellant in her apartment. She was awakened when the light came on in the room. She saw someone cross her line of vision and lean down over a coffee table. She

---

[1] While it is also stated in the notice of appeal that the appeal is from the sentence, the judgment in a criminal action is the sentence; the determination of the appeal with respect to the judgment embodies the determination thereof with respect to the sentence. (*People* v. *Carlson*, 177 Cal.App.2d 201, 207 [2 Cal.Rptr. 117]; *People* v. *Perkins*, 147 Cal. App.2d 793, 797-798 [305 P.2d 932]; *People* v. *Tokich*, 128 Cal.App.2d 515, 519 [275 P.2d 816].)

screamed. The person turned around and looked at her. He gave her a "full-faced stare." Her husband started to get up. The person rushed out of the room and slammed the door. She had a good look at him; he was the appellant. Her husband's wallet containing one dollar was missing. On cross-examination, she said that she described the man to the police as having some hair hanging down over his face. From the moment she saw the man until he left, the time which elapsed was no more "than maybe three minutes." She could not state how long she looked at his face "but it was long enough for a full-face gaze"; she saw his full face for just a few seconds. On redirect examination, she said that she saw the appellant a few days later when he was talking on the telephone in the hallway of the apartment house.

The appellant testified that on October 14 he lived in apartment 210 of the apartment house where Mrs. Liwicki lived. He was not in her apartment in the early morning hours on that date, but was "[h]ome in bed." During the four-week period thereafter until his arrest he resided in apartment 210. He could not "positively say one way or the other" whether he had ever seen Mrs. Liwicki before he was arrested. Several weeks before his arrest, he was waiting for an important telephone call when the telephone rang. He answered it and was requested to call Mr. Liwicki to the telephone. So he went to the apartment bearing the number mentioned by the caller and knocked on the door. A man came to the door and the appellant asked if he was Mr. Liwicki and told him he was wanted on the telephone. The appellant then went down to his own apartment. On October 14, the appellant's hair "was shaved in the center" because he had had an operation on the top of his head, but the hair "had grown out a little bit." The "sides were not shaved." On cross-examination, he said that when he was arrested in November his hair was about the same length as on October 14. He stated that a picture which was then exhibited to him showed approximately the condition of his hair on the day of the arrest.

Mrs. Brewer testified that she was the landlady at the apartment house. The appellant was there from September 11 until about November 25. She did not recall a shaven condition of his hair but his hair "was not as short as it is now, but it was not very long, combed back." Since the arrest of the appellant she had received reports from people of attempts to enter apartments with a key. On cross-examina-

tion, she said that the picture (previously identified by the appellant) showed aproximately the appearance of the appellant's hair when he was residing in the apartment house.

The appellant's first contention is that he was denied "a fair and impartial hearing, by the lack of diligence and proper handling of his case by defense counsel." He asserts that his counsel failed to present evidence on his behalf and, in particular, the testimony of Mr. Liwicki. As a result, he says, it is not known what his testimony would have revealed but "[a]ppellant is entitled, he believes, to the reasonable doubt that this witness would have contradicted the testimony of his wife, or at least have cast doubt upon it." He further asserts that his "counsel was not diligent in any cross-examination of witnesses; and in general, made an inadequate and incompetent defense. . . ."

■ The appellant's criticism of his own counsel does not present a sufficient basis upon which to ask a reversal of the judgment. The Supreme Court stated in *People* v. *Wein,* 50 Cal.2d 383, at page 410 [326 P.2d 457]: "The handling of the defense by counsel of the accused's own choice will not be declared inadequate except in those rare cases where his counsel displays such a lack of diligence and competence as to reduce the trial to a 'farce or a sham.' " The representation of the appellant was adequate and there was no denial of due process in this case. (See also *People* v. *Mosely,* 164 Cal.App.2d 829, 833 [331 P.2d 65]; *People* v. *Dupree,* 156 Cal.App.2d 60, 69 [319 P.2d 39].)

■ The second contention of the appellant is that he should have been found guilty of burglary in the second degree rather than of burglary in the first degree. But a mere reading of section 460 of the Penal Code in the light of the evidence that the dwelling place of Mr. and Mrs. Liwicki was entered in the nighttime dispels that assertion. That section is in part: "Every burglary of an inhabited dwelling house . . . or building committed in the nighttime . . . is burglary of the first degree." The evidence clearly established a burglary of the first degree. (*People* v. *Miller,* 71 Cal.App. 150, 152 [234 P. 905]; *People* v. *Helm,* 156 Cal.App.2d 343, 344 [319 P.2d 644].)

The appellant next attacks the sufficiency of the evidence to sustain the conviction in that, he asserts, the evidence relating to the identification of him as the burglar was of insufficient weight. ■ But the testimony of one witness

worthy of belief was sufficient to enable the court to make its finding of guilt in the present case. (*People* v. *Cole,* 158 Cal.App.2d 183, 186 [322 P.2d 29] ; *People* v. *Ferlito,* 100 Cal.App. 355, 356 [280 P. 136] ; see *People* v. *Rodriquez,* 169 Cal.App.2d 771, 778 [338 P.2d 41].) There was nothing inherently improbable in the testimony of Mrs. Liwicki. It is obvious that the trial court believed that she was telling the truth and that the appellant was not. ▮ As stated in *People* v. *Kittrelle,* 102 Cal.App.2d 149, at page 154 [227 P.2d 38] : "The question of identification of the perpetrator of a crime is one for determination by the trier of fact and unless the evidence of identity is so weak as to constitute no evidence at all this court cannot set aside the decision of the trial court." In rejecting an argument akin to that of the appellant in this case, the court in *People* v. *Warren,* 175 Cal.App.2d 233 [346 P.2d 64], said at page 244: "Appellant also challenges the sufficiency of the evidence. This objection goes chiefly to the credibility of the witness Wilkerson who identified the appellant as the man whom he saw at the scene of the crime. . . . While the appellant contends that the evidence is inherently improbable the challenge really goes to the credibility of the witness and an appellate court will not substitute its determination for that of the trier of fact." (See also *People* v. *Murphy,* 173 Cal.App.2d 367, 375 [243 P.2d 273].)

The appellant finally asserts that the trial judge failed to give him "the benefit of reasonable doubt." He appears to believe that his testimony offset that of Mrs. Liwicki and, therefore, the court could not find him guilty. ▮ But even though the appellant told a story which would exculpate him, it was for the trier of fact, in the exercise of the function of determining the credibility of the witnesses, to reach a conclusion as to whether the appellant was to be believed. (*People* v. *Russell,* 34 Cal.App.2d 665, 669-670 [94 P.2d 400] ; see *People* v. *Murieta,* 1 Cal.App.2d 727, 728 [37 P.2d 158].) The evidence of the prosecution was sufficient to sustain the finding of the appellant's guilt. ▮ There is no reason to doubt that the trial judge, as the trier of fact, believed that such guilt was established beyond a reasonable doubt. The weight to be given to the evidence was a matter exclusively within the domain of the trial court and the appellate court is not free to interfere with such determination in this case. (*People* v. *Flummerfelt,* 153 Cal.App.2d 104, 105-106 [313 P.2d 912].)

A careful consideration of the record has satisfied us that the appellant received a fair trial and that there was no error.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied December 8, 1960, and appellant's petition for a hearing by the Supreme Court was denied January 18, 1961.