Opinion
 

 DELUCCHI, J.
 
 *
 

 Appellant appeals from a judgment which was rendered after a jury found him guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)), with a special finding that he had used a firearm within the meaning of Penal Code section 12022.5.
 

 Carlos and Manuel Galvan were driving to the “Shortstop” store in Napa when they encountered appellant, who was on a motorcycle. Appellant challenged the Galvans to fight, but they drove off and continued to the Shortstop. Appellant, riding double on a motorcycle with his younger brother Phillip, met the Galvans at the Shortstop.
 

 After exchanging words with the Galvans, appellant pulled out a pistol. The Galvans quickly drove off. Shortly afterward, they heard a gunshot behind them. Appellant (and his brother) pursued the Galvans’ car. Later, near a bridge, the Galvans heard a second shot.
 

 Napa Police Officers Augsburger and Faria were seated in separate police vehicles at a parking area near the bridge. Augsburger heard a “bang” and felt a projectile strike his car. Officer Faria saw the Galvans’ automobile drive quickly by, and pursued it. After talking with the Galvans, Faria informed Augsburger by radio that appellant was responsible for the shooting. Augsburger pursued appellant’s motorcycle and apprehended him and Phillip. Faria later found a loaded revolver in some bushes in the vicinity of the second shooting.
 

 Appellant presented evidence that he had fired up at a 45° angle. He testified that he had done this “to scare” the Galvans, and that he could have hit the Galvans’ vehicle if he had wanted to. Appellant admitted that he did not have a license for the revolver.
 

 Appellant raises the following issues:
 

 
 *5
 
 A. Was it error to instruct the juiy on a rebuttable presumption of intent?
 

 With reference to appellant’s admission that he had no license for the revolver, the court instructed the jury: “When a person has been charged with committing a felony such as assault with a deadly weapon against the person of another while armed with a pistol, revolver, or other firearm capable of being concealed upon the person, without having a license or permit to cariy such firearm,
 
 the fact that he was so armed shall be prima facie evidence of his intent to commit the felony if such weapon was used in the commission of the offense.''’
 
 (Italics added.) The trial court then defined “prima facie evidence” as “such evidence as is sufficient to establish a fact constituting a party’s claim, and which if not rebutted or contradicted, will remain sufficient.”
 
 [1]
 
 Appellant contends that the instruction was improper.
 

 Penal Code section 12023
 
 [2]
 
 creates a rebuttable presumption, in that it makes a finding of certain facts prima facie evidence of another fact. (Evid. Code, § 602.)
 

 To apply a rebuttable presumption against the defense in a criminal case violates due process “unless it can at least be said with
 
 substantial assurance
 
 that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.”
 
 (Leary
 
 v.
 
 United States
 
 (1969) 395 U.S. 6, 36 [23 L.Ed.2d 57, 82, 89 S.Ct. 1532] [italics added].)
 

 There is no substantial assurance that a person who is accused of committing a felony with an unlicensed concealable weapon is more likely to have the requisite intent to commit the crime than an accused who used a properly licensed weapon.
 
 [3]
 

 
 *6
 
 It is apparent that the Legislature, in enacting Penal Code section 12023, sought to penalize those persons who violate the state’s strong public policy against the carrying of unlicensed firearms. However, the means chosen here (i.e., relaxing the prosecution’s burden of proof in felony trials involving the defendant’s use of an unlicensed concealable weapon) is not consistent with due process. An unlicensed possessor of a concealed firearm is no less protected by the presumption of innocence than the lawful possessor who is accused of committing the same crime. Tampering with the burden of proof is not a permissible method of discouraging the use of unlicensed firearms.
 

 Since the error in giving the instruction was of constitutional dimensions, it follows that the judgment must be reversed unless it can be said that the instructional error was harmless beyond a reasonable doubt.
 
 (Chapman
 
 v.
 
 California
 
 (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; Witkin, Cal. Criminal Procedure (1978 supp.) § 741B, p. 1045.) We hold that the error was harmless under this standard because, given the state of the evidence, the jury could not reasonably have come to any other conclusion regarding intent.
 

 In
 
 People
 
 v.
 
 Rocha
 
 (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372], the Supreme Court held that assault with a deadly weapon is not a specific intent crime: “. . . the criminal intent which is required for assault with a deadly weapon ... is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another. Given that intent it is immaterial whether or not the defendant intended to violate the law or knew that his conduct was unlawful.
 
 The intent to cause any particular injury
 
 [citation], to severely injure another, or to injure in the sense of inflicting bodily harm
 
 is not necessary.” (Id.,
 
 at p. 899 [fns. omitted; italics added].)
 

 In
 
 People
 
 v.
 
 Lathus
 
 (1973) 35 Cal.App.3d 466 [110 Cal.Rptr. 921], the Court of Appeal affirmed an assault with a deadly weapon conviction on the basis of evidence that, while riding as a passenger on a freeway, defendant shot at a stalled automobile. The court pointed out that proof of an act committed with a conscious disregard for human safety was all that was necessary to satisfy the intent requirement: “. . . when an act inherently dangerous to others is committed with a conscious disregard of
 
 *7
 
 human life and safety, the act transcends recklessness, and the intent to commit the batteiy is presumed; the law cannot tolerate a deliberate and conscious disregard of human safety.
 
 Thus, if one deliberately employs a lethal weapon, such as a gun, with actual or presumptive knowledge that if utilized in the manner in which it is being used the infliction of serious bodily injury to another is very likely to occur, he is presumed to have intended the natural consequences of his deliberate act.” (Id.,
 
 at p. 470 [italics added].)
 

 According to appellant’s own version of the incident, he fired two shots at a 45° angle while pursuing at high speed a car occupied by human beings. Appellant admitted that his weapon was pointed in front of him and that the occupied vehicle was at least “two car lengths away.” It was not contradicted that one of appellant’s shots struck an occupied police car which was parked at the side of the road. The jury could not reasonably have reached any conclusion other than that appellant had acted with a conscious disregard for human safety. The requisite intent for assault with a deadly weapon was thus demonstrated overwhelmingly and without contradiction. Therefore, the instructional error was harmless beyond a reasonable doubt.
 

 B. Did the prosecutor commit prejudicial misconduct requiring reversal?
 

 Appellant contends that the prosecutor committed prejudicial misconduct in his closing argument to the jury. There was no objection at trial to the claimed acts of misconduct; therefore, the contention cannot be heard on appeal unless “ ‘the case is closely balanced and there is grave doubt of defendant’s guilt, and the acts of misconduct are such as to contribute materially to the verdict. . . [or] ... the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court.’ ”
 
 (People
 
 v.
 
 Perry
 
 (1972) 7 Cal.3d 756, 790 [103 Cal.Rptr. 161, 499 P.2d 129].) Here, a timely admonition from the trial court would have cured any prejudice arising from the challenged remarks; thus the second exception does not apply. In determining whether the case falls within the first exception, it is apparent from the foregoing discussion that the claimed misconduct could not have materially contributed to the verdict unless it related to the issue of appellant’s intent in shooting the gun. For that reason, it is not necessary to discuss appellant’s contention that the prosecutor appealed to the jury’s passion and prejudice by allegedly urging the jury “to consider the issue of penalty.”
 

 
 *8
 
 Appellant argues that the prosecutor “repeatedly and deliberately” misquoted the law by stating that the mere act of firing the gun constitutes assault with a deadly weapon. The record indicates that the prosecutor argued that shooting without a “specific intent” would bring appellant “in the realm of the crime of assault with a deadly weapon.” He referred to assault with a deadly weapon as a “general intent crime” involving “no particular thought that the defendant must have had in his mind when he committed the crime, as long as he intentionally committed the act. . . .” It is clear that his statements were very close to the correct definition of assault, which requires a general intent to attempt to commit a battery.
 
 (People
 
 v.
 
 Rocha, supra,
 
 3 Cal.3d 893 at p. 899.) No misconduct appears.
 

 Appellant next contends that the prosecutor improperly suggested that Phillip’s testimony had been fabricated. However, as the Attorney General points out, there were serious inconsistencies in Phillip’s testimony. Hence the prosecutor’s statements were permissible. (See
 
 People
 
 v.
 
 Strickland
 
 (1974) 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].)
 

 Appellant claims that the prosecutor improperly implied that appellant’s testimony should be disbelieved because he was on trial, and that this statement undermined the presumption of innocence. The prosecutor did'argue that appellant’s testimony should receive less credence than that of Officer Augsburger because appellant had a motive to lie. This comment was proper; it pointed to a possible inference from the evidence. (Cf.
 
 People
 
 v.
 
 Washington
 
 (1969) 71 Cal.2d 1061, 1085, 1086 [80 Cal.Rptr. 567, 458 P.2d 479].)
 

 There was no prosecutorial misconduct requiring reversal.
 

 C. Did the trial court commit prejudicial error when it failed to give certain instructions
 
 sua spontel
 

 Appellant argues that the court erred when it failed to instruct,
 
 sua sponte,
 
 that only a reasonable doubt need be raised to rebut the presumption. It has been held that when instructions on criminal presumptions are given, a “qualifying instruction” should be given “informing the jury that the burden thus placed upon the defendant could be met by evidence
 
 which produced in their minds a reasonable
 
 doubt” as to whether the presumed fact is true.
 
 (People
 
 v.
 
 Agnew
 
 (1940) 16 Cal.2d 655, 666 [107 P.2d 601] [italics added]. See also
 
 People
 
 v.
 
 Hardy
 
 
 *9
 
 (1948) 33 Cal.2d 52, 64 [198 P.2d 865].) The only standard which the jury was given in this case concerning either the guilt of the appellant or the validity of the presumption was that of “reasonable doubt.”
 

 Agnew
 
 and
 
 Hardy
 
 are distinguishable because the juries there were instructed that overcoming the presumption would require a preponderance of the evidence. Here the trial court instructed the jury three times on the reasonable doubt standard as to the entire case, the last discussion of reasonable doubt occurring directly after the instruction on the unlicensed firearm presumption. In the absence of a request for a more specific instruction, this charge was sufficient. (See
 
 People
 
 v.
 
 Katz
 
 (1975) 47 Cal.App.3d 294, 302-303 [120 Cal.Rptr. 603];
 
 People
 
 v.
 
 Schrieber
 
 (1975) 45 Cal.App.3d 917, 924 [119 Cal.Rptr. 812].)
 

 Appellant’s contention that the court was required to instruct that a presumption is not evidence is unsupported by any authority.
 

 Appellant also argues that the court should have instructed on certain lesser included offenses. A lesser included offense exists “when the charged offense as defined by statute . . .
 
 cannot
 
 be committed without also committing a lesser and included offense. [Citations.]”
 
 (People
 
 v.
 
 Escarcega
 
 (1974) 43 Cal.App.3d 391, 396 [117 Cal.Rptr. 595] [original italics].) Thus, “[i]t is of no consequence that the
 
 evidence
 
 at trial might also establish guilt of another and lesser crime than that charged.”
 
 (Ibid.
 
 [original italics, fn. omitted].) Appellant’s argument that four other offenses were “clearly made out by the evidence” is wholly irrelevant. The supposed included offenses are not contained within the elements of the crimes charged. Therefore, no instruction on lesser included offenses was required.
 

 D. Is the prosecution’s failure to make an election between the two shootings grounds for reversal?
 

 Appellant argues that the prosecutor committed “prejudicial error” in failing to elect “as to which of the two shootings the jury was to determine guilt.”
 

 Appellant’s argument presupposes that two separate offenses were involved. But appellant could be regarded as engaging in one course of assaultive conduct beginning with his drawing a revolver and ending with his discarding of the weapon. On that view, either shooting could provide support for the finding of guilt. “[I]t is not necessaiy that all jurors agree
 
 *10
 
 on one or more of several theories proposed by the prosecution; it is sufficient that each juror is convinced beyond a reasonable doubt that the defendant is guilty . . .
 
 (People
 
 v.
 
 Milan
 
 (1973) 9 Cal.3d 185, 195 [107 Cal.Rptr. 68, 507 P.2d 956].) No error appears.
 

 The judgment is affirmed.
 

 Caldecott, P. J., and Christian, J., concurred.
 

 A petition for a rehearing was denied July 10, 1979.
 

 *
 

 Assigned by the Chairperson of the Judicial Council.
 

 [1]
 

 This definition was apparently taken from the Black’s Law Dictionary entry for “prima facie evidence.” (See 4th ed., pp. 1353-1354.)
 

 [2]
 

 “12023. In the trial of a person charged with committing or attempting to commit a felony against the person of another while armed with any of the weapons mentioned in Section 12020, or while armed with any pistol, revolver, or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as provided by this chapter, the fact that he was so armed shall be prima facie evidence of his intent to commit the felony if such weapon was used in the commission of the offense.”
 

 [3]
 

 We do not imply, however, that the fact that a concealable unlicensed weapon was used cannot properly be taken into consideration by the jury, along with other circumstances attending the act, in determining the question of intent. (CALJIC No. 3.34.) We merely hold that unlicensed possession, standing alone, cannot be accorded such weight as to give rise to a presumption.