[Crim. No. 34664. Second Dist., Div. Three. Dec. 24, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
HARVEY YODER, Defendant and Appellant.

334

COUNSEL

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Kenneth Green and John L. Ryan, Deputy Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ALLPORT, J.**—Following trial by jury Harvey Yoder was convicted of first degree burglary in violation of Penal Code section 459 and sentenced to state prison. He appeals from the judgment.[1]

### FACTS

At approximately 8:30 p.m. on May 27, 1978, defendant was apprehended while admittedly burglarizing the residence of Paul de Fonville in the Silver Lake area of the City of Los Angeles. The arresting officer testified defendant had a mild odor of alcohol on his person but exhibited no evidence of being under the influence of alcohol or drugs.

Defendant testified in his own defense to being under the influence of alcohol and drugs to the extent that he was unable to recall any of the evening's events after being ordered off a bus in the Glendale or Burbank area except for hearing some glass breaking and being handcuffed by the police.[2]

### CONTENTIONS

It is contended on appeal that the trial court committed reversible error in refusing to instruct the jury properly and fully as to the defense of diminished capacity in a specific intent crime. While it is suggested that the error resulted from the refusal to give *requested* instruction CALJIC No. 3.35 and one on the less serious offense of trespass resulting from an unlawful entry in violation of Penal Code section 602.5, we note that CALJIC No. 3.35 was not requested until after the jury had retired to deliberate and that no specific instruction was ever prepared and tendered to the court on the subject of unlawful entry. However, on

---

[1]Yoder admitted three prior felony convictions which were duly considered in conjunction with his sentence.

[2]There was evidence that the residence was entered through a broken window.

the record before us, the jury was required to be properly instructed on the defense of diminished capacity, *sua sponte* or otherwise. (*People v. Juarez* (1968) 258 Cal.App.2d 349, 356 [65 Cal.Rptr. 630].) For that reason, except as hereinafter noted, we find it unnecessary to address the issue of timely and procedurally adequate requests for jury instructions and will endeavor to determine whether the jury was in fact properly and fully instructed on the defenses available to defendant under the facts in the instant case.

## DISCUSSION

The jury was instructed, inter alia, that entry of an inhabited dwelling house with the specific intent to steal is burglary (CALJIC No. 14.50) and that in the absence of the required specific intent to steal the crime is not committed. (CALJIC Nos. 2.72, 3.31.) The court then instructed generally that voluntary intoxication from the willing partaking of intoxicating liquor or drugs is not a defense (CALJIC Nos. 4.20, 4.22) but that "there is an exception to this rule, in the crime of burglary of which the defendant is accused a necessary element is the existence in the mind of the defendant of the specific intents to steal the property of another and to deprive the owner permanently of his property. [¶] If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such specific intents. [¶] If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent, you must give the defendant the benefit of that doubt and find that he did not have such specific intent and then should acquit the defendant." (CALJIC No. 4.21 as modified.) While there appears to be a conflict between 4.20 and 4.21,[3] nevertheless when read together it is clear that if defendant was determined to lack the specific intent to steal as a result of intoxication, he should be acquitted. See *People v. Rhodes* (1971) 21 Cal.App.3d 10, 21-22 [98 Cal.Rptr. 249], wherein it is said: "The third defect alleged is that the trial court improperly used CALJIC No. 319 (Rev.) in order to instruct the jury on the issue of voluntary intoxication. Specifically, defendant objects to the first sentence[7] of that instruction. The first sentence used in CALJIC No. 319 (Rev.) is taken from the first sen-

---

[3] The giving of CALJIC No. 4.20 alone would obviously be error in this case. (See *People v. Vasquez* (1972) 29 Cal.App.3d 81, 89 [105 Cal.Rptr. 181].)

"[7] 'No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition.'"

tence of California Penal Code section 22. This sentence has been the focus of prior judicial attention. In *People* v. *Ford*, 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892], the California Supreme Court ruled that this sentence, when used in the context of the other language in CALJIC instructions Nos. 78 and 319, caused those instructions to have the potential 'to leave the jury in a state of confusion.' A single sentence, however, may or may not be confusing, depending upon the context in which the sentence lies. In *People* v. *Hunter*, 146 Cal. App.2d 64, 67 [303 P.2d 356], the court stated: "'Error cannot be predicated upon an isolated phrase, sentence or excerpt taken from the instructions...since, in order to determine the correctness...in their relations to and with each other and in the light of the instructions as a whole and whether a jury has been correctly instructed is not to be determined from a consideration of a part of an instruction or one particular instruction, but from the entire charge of the court.'" Specifically, *People* v. *Conley*, 268 Cal.App.2d 47, 53 [73 Cal.Rptr. 673] holds: 'When there is an issue of diminished capacity due to intoxication, an instruction in the language of Penal Code section 22 is not necessarily error.' In *People* v. *Asher*, 273 Cal.App.2d 876, 902 [78 Cal.Rptr. 885], the court held that '[a] review of the instructions... reveals that the trial court emphasized and reiterated that intoxication could occasion diminished capacity which would negate the existence of the requisite mental state for either robbery or murder. By no stretch of the imagination could the jury have been confused by the reading of the first sentence of [Penal Code] section 22 in connection with the other instructions.'"

The argument is made that it was error not to give CALJIC No. 3.35 instead of No. 4.21. CALJIC No. 3.35 reads as follows: "When a defendant is charged with a crime which requires that a certain specific intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged.

"If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent or mental state, you must give defendant the benefit of that doubt and find that he did not have such specific intent or mental state."

It is said that the failure to advise the jury that there was a mandatory duty to consider all the evidence in determining mental capacity requires reversal. ■ We do not agree it was error to refuse to give No. 3.35. Number 4.21 is a proper choice where, as here, intoxication from the use of alcohol and drugs is the only evidence in the record supporting a defense of diminished capacity. Number 3.35 would be the choice where diminished capacity is predicated upon facts other than the use of drugs and alcohol. In the instant case the jury was told to consider intoxication and *all* the evidence in determining if defendant was capable of forming the necessary specific intent and that he *must* be acquitted absent the existence of such. We do not agree that by giving No. 4.21 instead of No. 3.35 the court "withheld from the jury the *mandatory* duty to consider *all* of the evidence as it related to appellant's mental capacity." ■ In this respect we find the following from *People* v. *Romo* (1975) 47 Cal.App.3d 976, 990-991 [121 Cal.Rptr. 684], appropriate: "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole. We must also assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given. (*People* v. *Henley* (1969) 269 Cal.App.2d 263 [74 Cal.Rptr. 611].)

". . . In any event, the jury was instructed on the significance of voluntary intoxication as it bears upon the 'state of mind' which is a necessary element of . . . [burglary] . . . . The court likewise instructed on the effect of diminished capacity induced by intoxication upon the specific mental states which are essential elements of . . . [the crime]. Although the precise instruction was not given . . . of which an error in omission is now charged, the jury was instructed to consider the instructions as a whole. The instructions given on diminished capacity, viewed in combination, were the substantial equivalent of an instruction that diminished capacity could negate the specific intent required for . . . [burglary]."

It is also argued that the holding of this court in *People* v. *Stevenson* (1978) 79 Cal.App.3d 976, 986-987 [145 Cal.Rptr. 301], "mandates reversal of the conviction in the instant case." We do not agree. In *Stevenson* the defendant was charged with assault with a deadly weapon with intent to commit murder and a lesser and necessarily included offense. It was held that the failure to give the proper, full and complete instructions requested by defendant on the effect of diminished

capacity was reversible error. In this respect it was said, inter alia, at page 987: "In the trial court's giving of CALJIC No. 4.21, it erroneously limited the application of diminished capacity due to voluntary intoxication to the single specific intent to 'commit murder.' Instead, in the event of a retrial of the case at bar, a modified version of CALJIC No. 8.77 should be given, covering the effect of diminished capacity due to voluntary intoxication on the specific intents to commit murder and to unlawfully kill a human being as well as the specific mental state of malice aforethought.

"CALJIC No. 3.35 (*Wells-Gorshen* rule) on diminished capacity due to voluntary intoxication is a proper instruction (see *People* v. *Spaniel, supra*, 262 Cal.App.2d 878, 886-887 [69 Cal.Rptr. 202]) and is to be used instead of CALJIC No. 4.21. The latter uses language that '...the jury *should consider* his state of intoxication in determining if defendant had such specific intent.' CALJIC No. 3.35 language tells the jury '...you *must* take all the evidence into consideration....' in making such a determination. (Italics added in both instructions.) This mandatory language comports with the CALJIC No. 2.90 instruction on proof beyond a reasonable doubt as to defendant's guilt. The jury may not *believe* the defense evidence on diminished capacity, but it *must* take it into consideration in its deliberations if the defendant is to have a fair trial on all the issues raised." We construe these comments simply as advice to the lower court as to the framing of appropriate instructions in the event of retrial of that case rather than as a general condemnation of CALJIC No. 4.21 in favor of No. 3.35 in all cases. In any event *Stevenson* does not hold the use of No. 4.21 to be reversible error per se and we are not inclined to do so in the case at bench.

■ As a corollary, citing *People* v. *Wetmore* (1978) 22 Cal.3d 318, 330-331 [149 Cal.Rptr. 265, 583 P.2d 1308], it is further argued that failure to instruct concerning unlawful entry (Pen. Code, § 602.5) compels reversal because defendant's testimony, if believed, demonstrates that upon entry into the de Fonville residence, defendant could not have had the specific intent to steal rendering him guilty only of an illegal trespass not burglary. While authority for the proposition that diminished capacity may be a defense to the crime of burglary, *Wetmore* does not support the argument made herein that it was error to refuse to instruct on the crime of unlawful entry. In the instant case the defense of lack of specific intent was, as shown above, properly presented to the

trier of fact. Since unauthorized entry is not a necessarily included offense within the crime of burglary (*People* v. *Wetmore, supra,* at p. 327, fn. 8), no additional instructions thereon were required. (*People* v. *Bedolla* (1979) 94 Cal.App.3d 1, 9 [156 Cal.Rptr. 171].) *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1], relied upon by defendant is not authority to the contrary.

The judgment is affirmed.

Klein, P. J., and Potter, J., concurred.

A petition for a rehearing was denied January 18, 1980, and appellant's petition for a hearing by the Supreme Court was denied February 27, 1980.