Filed 11/3/21  P. v. Lafita CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091733 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE018618) |
| v. | |
| RAUL LACERDA LAFITA, | |
| Defendant and Appellant. | |

Defendant Raul Lacerda Lafita was found guilty of assault with a deadly weapon other than a firearm (Pen. Code,[1] § 245, subd. (a)(1)—count one), and two counts of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)—counts two & three).  The jury also found true that defendant had been previously

---

[1]     Undesignated statutory references are to the Penal Code.

1

convicted of assault with a deadly weapon, which was both a serious felony and a prior strike. The trial court sentenced defendant to the upper term on counts one and two, and one-third the midterm on count three, for a total of 15 years. The trial court declined to impose all discretionary fees, fines, and assessments while imposing all mandatory fines, fees, and assessments. Defendant now appeals on the basis that the trial court imposed the upper term on count one and count two by improperly relying on factors that were either elements of the crime, or factors that had already been taken into consideration as part of the decision to deny his *Romero*[2] motion. Defendant also argues that the trial court erred in not holding a hearing to determine whether defendant was financially able to pay the imposed fines, fees, and assessments, and that the trial court inadvertently imposed a higher restitution fine than it intended. We shall affirm the judgment.

BACKGROUND

Union Gospel Mission provides housing for people without homes, as well as shower privileges for those living on the streets. One evening, defendant went to their shower facilities and asked Andrew J., a fellow resident and Mission employee, if he had seen defendant's bike lock and chain, which was missing. Andrew repeatedly responded that he had not taken defendant's lock. Defendant, who does not speak fluent English, believed Andrew was responding to him with "offensive" language, and so he began repeating Andrew's words back to him, including "[f]uck you."

Andrew testified as he turned away from defendant, defendant then grabbed him by his back and repeatedly punched him in his head. Andrew then lost his balance, but defendant held him by his neck and continued punching him. Defendant testified that Andrew initiated the fight by coming toward him and punching him, after which defendant punched him. Eventually, several other individuals approached defendant and

---

**2** *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

pulled him away from Andrew, at which point defendant picked up a stool and began swinging it. He swung it approximately six or seven times. Defendant testified he was only using the stool as a shield to prevent everyone from punching him.

Bobby C. came upon the fight and assisted the other individuals in separating defendant from Andrew. When defendant swung the stool at Bobby, he was approximately four feet away. Bobby jumped back to avoid being hit. While he was never actually hit, defendant swung the stool "pretty hard" at Bobby several times, and one man was hit in the wrist. Defendant backed into the dining room and Bobby began trying to encourage defendant to "calm down." While this was all going on, defendant was "cussing at everybody" and at times swinging the stool overhead. Finally, Bobby and several others were able to get defendant on the ground and hold him down, at which point they called 911. While defendant was being held on the ground he was "squirming . . . kicking and trying to get away." Eventually defendant calmed down and only two people were necessary to hold him down while waiting for law enforcement to arrive.

The jury found defendant guilty of count one, assault with a deadly weapon other than a firearm against Bobby (§ 245, subd. (a)(1)), and counts two and three for assault by means of force likely to produce great bodily injury against Bobby and Andrew, respectively (§ 245, subd. (a)(4)). The jury also found true the allegation that defendant had been previously convicted of assault with a deadly weapon which was both a serious felony and a prior strike.

Prior to sentencing, the trial court considered the probation report, which detailed defendant's history of convictions for violent conduct. In 1997, defendant was convicted of third-degree assault in Missouri. In 1998, defendant was convicted of third-degree battery and placed on probation for stabbing two victims following a verbal altercation. In 1999, defendant admitted a violation of probation after being involved in a bar fight, resisting an arresting officer, and vandalizing a hospital entry sign. Defendant was

3

sentenced to 17 months in prison. In 2002, defendant was placed on probation following a conviction for assault with a deadly weapon, having stabbed the victim in both legs with a knife. In 2010 defendant was convicted of forcible sexual penetration of a person, and was sentenced to six years in prison. In 2015, defendant was convicted of assault with a deadly weapon other than a firearm for hitting an individual at Union Gospel Mission approximately 25 times with a bamboo shaft. Defendant was sentenced to four years in prison.

The probation report noted that defendant was not eligible for probation as a prior strike conviction was found true. Further, circumstances in aggravation included that the crimes involved acts showing a high degree of viciousness, defendant has engaged in conduct showing a serious danger to society, his prior convictions as an adult are numerous, he has served three prior prison terms, and he was on parole when the crimes were committed.

In declining to dismiss defendant's prior conviction, the trial court noted that defendant's, "behavior has been violent, and it's been sustained, and it's been going on for years . . . it is noteworthy he was in a parole status when this crime was committed." The trial court then imposed the upper term of four years for defendant's conviction for assault with a deadly weapon other than a firearm. The term was doubled to eight years pursuant to sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1). The trial court imposed the upper term "based on the fact that the defendant engaged in violent conduct, indicating himself to be a serious danger to society pursuant to California Rules of Court 4.421(b)(1)." As to defendant's conviction for assault by means of force likely to produce great bodily injury as against Bobby, the trial court imposed the upper term of four years "based on the defendant's prior convictions as an adult being numerous. But pursuant to . . . section 654, imposition of sentence for that violation is stayed." As to defendant's conviction for assault by means of force likely to produce great bodily injury as against Andrew J., the trial court sentenced him to "one-third of the midterm, or one

4

year, and this is doubled to two years, based on the prior strike, pursuant to . . . sections 667(e)(1) and 1170.12(c)(1)." The trial court also imposed an additional five-year term for "the prior strike occurring within five years of the present case." The aggregate prison term is 15 years.

The trial court imposed a restitution fine, less than the amount recommended in the probation report, stating it was imposing: "Statutory restitution, which is mandatory, I'll reduce that per conviction to the amount of 900 dollars pursuant to 1202.4." The trial court also imposed a mandatory court operations assessment of $120, and a court facility fee of $90. The trial court declined to impose all discretionary fees, including the cost of probation investigation and presentence report.

DISCUSSION

I

*Upper Term*

Defendant appeals the sentence imposed on the basis that the trial court relied on improper factors when it selected the upper terms on count one and count two.[3] Specifically, defendant contends as to count one the trial court relied on defendant's violent conduct (Cal. Rules of Court, rule 4.421(b)(1)), but that violent conduct is an element of assault (§ 240); and, as to count two the trial court relied on defendant's numerous prior convictions, but had already considered defendant's prior criminal record in deciding not to strike his prior conviction enhancement.

Acknowledging trial counsel did not make a specific "dual use" objection at sentencing, defendant also argues that if this Court finds this claim is forfeited by trial

---

[3] The Court notes that defendant's filings do not contain page numbers, in violation of California Rules of Court, rule 8.74(a)(2). This failure creates more work for the Court in endeavoring to review defendant's arguments.

5

counsel's failure to object at sentencing, then the issue is still subject to appellate review as defendant received ineffective assistance of counsel.

*Forfeiture*

"A defendant cannot for the first time on appeal challenge the manner in which the sentencing judge exercises discretion in making sentencing choices or articulates his or her supporting reasons. [Citation.] . . . [A] defendant's objections regarding claimed sentencing mistakes must be sufficiently specific and meaningful to allow the trial court to correct the errors . . . the sentencing judge has no obligation, when faced with an omnibus objection, to inquire further in an effort to ferret out the basis for the objection as it may exist in the mind of defense counsel." (*People v. de Soto* (1997) 54 Cal.App.4th 1, 4 (*de Soto*).)

In *de Soto*, trial counsel stated at sentencing that he was objecting to the court's selection of an upper term for the offense and to use of the "same facts both to aggravate the base term and to impose an enhancement. And again, just basically to your use of any fact constituting an element of the offense to aggravate or enhance the sentence." (*de Soto, supra*, 54 Cal.4th at p. 7.) Here, as in *de Soto*, defendant argues for the first time that the trial court violated the "dual use" prohibition and identifies the specific factors that he contends were considered in error. (*Ibid.*) The objections trial counsel made in this case fall below the general objection to aggravating factors made by counsel in *de Soto* and do not even suggest that the trial court erroneously relied on aggravating factors that were also elements of the crime. Instead, the objection was that sentencing defendant to the upper term was "unnecessary" and that the court should show defendant "some leniency." These statements are not "sufficiently specific and meaningful to allow the trial court to correct the errors" as to a claimed prohibited dual use of facts. (*Id.* at p. 4.) Accordingly, defendant has forfeited these claims, and cannot raise them for the first time on appeal.

6

*Dual Use*

One prohibition in sentencing is the proscription against the dual use of facts. Courts "generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense either to aggravate or to enhance a sentence. [Citations.]" (*People v. Scott* (1994) 9 Cal.4th 331, 350; § 1170, subd. (b); Cal. Rules of Court, rule 4.420(c), (d).)

Were we to excuse defendant's forfeiture and address the substance of his claims, we would find them meritless, because the trial court did not engage in a prohibited dual use of facts.[4]

Initially, defendant's argument as to his violent conduct presumes this factor is limited to the violent conduct involved in the crime at issue, but this factor is not so limited. (See *People v. Price* (1991) 1 Cal.4th 324, 492; *People v. Simon* (1989) 208 Cal.App.3d 841, 852.) Further, the record does not indicate the trial court limited its consideration to the violent conduct in the crime at issue. The trial court reviewed the probation report detailing defendant's lengthy history of assault, stabbings, a bar fight, resisting arrest, assault with a deadly weapon, forcible sexual penetration of a person, and repeatedly assaulting an individual with a bamboo shaft. Based on this violent history, the trial court stated: "Mr. Lafita, I don't relish the amount of time that I'm sentencing you to today. . . . [I]n light of your track record, it doesn't seem to be getting better, and you are a risk and a threat to society, and your life is going in the wrong direction, and I have—I have no qualms about the 15-year sentence." Thus, the record reflects the trial

---

[4]     In anticipation of a forfeiture finding, defendant contends it is the result of ineffective assistance of counsel. "As we discern no misconduct on the merits, defendant's ineffective assistance claim fails. We reiterate, however, that a defendant cannot automatically transform a forfeited claim into a cognizable one merely by asserting ineffective assistance of counsel. [Citation.]" (*People v. Thompson* (2010) 49 Cal.4th 79, 126-127, fn. 14.)

7

court considered the full extent of defendant's violent conduct, not merely in the current offense, with imposing the aggravated term on count one. Relying on defendant's significant violent history in aggravating the term of a violent felony is not an improper dual use.

Defendant also claims that the trial court improperly relied on defendant's numerous prior convictions to deny defendant's *Romero* motion, while also using his prior criminal history to impose an aggravated sentence. The People argue the trial court's decision not to exercise its discretion to strike the prior serious felony conviction did not aggravate or enhance defendant's sentence. The People argue the trial court's decision under *Romero* is about leniency, and the trial court's declination to grant such leniency did not prohibit it from also using the subject facts to aggravate a base term.

A *Romero* motion is a request that the court exercise its authority under section 1385 to strike a prior felony conviction. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) An order striking a prior felony conviction allegation "embodies the court's determination that, " 'in the interest of justice defendant should not be required to undergo a statutorily increased penalty which would follow from judicial determination of [the alleged] fact. [Citation]' " (*Romero, supra*, 13 Cal.4th at p. 508.) In this matter, the trial court declined to exercise its discretion to strike defendant's 2015 conviction and found that "the imposition of a sentence pursuant to three strikes sentencing scheme clearly falls within the meaning of the purpose of the statute."

We agree with the People. Defendant has not provided any legal authority that it is a prohibited dual use for a trial court to deny a *Romero* motion, determining he falls within the purpose of the statute, and then rely on defendant's prior criminal history in determining to impose an aggravated term.

Further, case law directs that the Three Strikes Law (§ 1170.12) enumerates an alternative sentencing scheme, not an enhancement provision. (See *People v. Cressy* (1996) 47 Cal.App.4th 981, 991; cf. *People v. Garcia* (2001) 25 Cal.4th 744, 757 ["On its

8

face, the plain and unambiguous language of the Three Strikes law discloses an intent to impose the enhanced, doubled sentence despite a possible 'dual use' of defendant's prior conviction."].) In considering a *Romero* motion, a trial court is directed to consider whether unusual circumstances exist such that the interest of justice requires defendant to be exempt from a statutorily mandated increased penalty. In denying defendant's *Romero* motion, the trial court did not aggravate a base term or impose an enhancement. The strike was *mandatory* unless the Court found an exception should apply. This determination is separate and distinct from the determination a trial court makes in determining whether a defendant should be sentenced to the aggravated term upon conviction. These two different determinations do not implicate prohibited dual use of facts.

## II

### *Ability to Pay Hearing*

Defendant also argues we should remand this matter to the trial court to consider waiving the "mandatory" fees pursuant to the reasoning in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Specifically, he contends the trial court erred in imposing mandatory fines without first deciding that defendant had a present ability to pay; and the trial court was unaware of its ability to strike these fines. Acknowledging that trial counsel did not object to the imposition of these fines, defendant argues that if we find the claim forfeited, we should also find he received ineffective assistance of counsel.

Defendant's claim hinges on the analysis in *Dueñas*, finding an ability to pay hearing is required before imposing fines and fees, and we are not persuaded that this analysis is correct. We conclude that defendant forfeited his challenge to the fines, fees, and assessment because the sentencing hearing was held after *Dueñas* was decided; there was thus authority for requesting an ability to pay hearing at the time of the sentencing hearing and defendant failed to do so. (Cf. *People v. Castellano* (2019) 33 Cal.App.5th

9

485, 489 [finding the defendant did not forfeit *Dueñas* argument because it was decided after sentencing]; see *People v. Aguilar* (2015) 60 Cal.4th 862, 866-867 [the defendant's failure to object at sentencing to certain fees on the basis of his inability to pay forfeited the challenge on appeal].)

Our Supreme Court is now poised to resolve the issues raised in *Dueñas*, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp*, at pp. 95-96.)

In the meantime, we join several other courts in concluding that the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.) Defendant's claim pursuant to *Dueñas* is without merit.

Considering our declination to adopt the holding in *Dueñas*, we need not address defendant's argument that trial counsel's failure to make a *Dueñas* objection violated defendant's Sixth Amendment rights.

### III

### *Mandatory Minimum Restitution Fine Under Section 1202.4*

Defendant argues the court misunderstood section 1202.4 as requiring it to impose a $300 fine per conviction as opposed to $300 per case. The People argue this claim is, once again, forfeited by defendant's failure to object before the trial court.

10

"Where a defendant has been convicted of several felony offenses in one proceeding, a restitution fine is not imposed on '*each* count' but instead one fine is imposed taking into account all the offenses in the proceeding; this proposition is based on the language of section 1202.4, subdivision (b) which states that in '*every case* where a person is convicted of a crime, the court shall impose a separate and additional restitution fine,' and then sets forth a formula for calculating the total amount. (Italics added.)" (*People v. Holmes* (2007) 153 Cal.App.4th 539, 547.)

A party who fails to object to the imposition of a fine or fee in the trial court may not raise a claim pertaining to that charge on appeal. (See, e.g., *People v. Aguilar, supra*, 60 Cal.4th at p. 868 [appellate forfeiture rule applies to probation fines and attorney fees imposed at sentencing]; *People v. McCullough* (2013) 56 Cal.4th 589, 596-598 [the defendant forfeits appellate challenge to the sufficiency of evidence supporting a Gov. Code, § 29550.2, subd. (a) booking fee if objection not made in the trial court]; *People v. Avila* (2009) 46 Cal.4th 680, 729 [forfeiture rule applies to the defendant's claim that restitution fine amounted to an unauthorized sentence based on his inability to pay]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 [claim that trial court erroneously failed to consider ability to pay a restitution fine forfeited by the failure to object].) Defendant did not object to the imposition of this fine in the trial court, and therefore, the claim is forfeited.

Defendant argues that if we find the claim forfeited, then it was the result of ineffective assistance of counsel. However, we conclude the lack of an objection also does not establish ineffective assistance of counsel. Defendant has not met his burden to demonstrate that the trial court erred when it imposed the $900 fine based on $300 per conviction. Defendant's claim presupposes the trial court intended to impose the statutory minimum and mistakenly thought that minimum was $300 per count.

The record reflects that the trial court struck the discretionary fees and declined to impose the $3,000 amount recommended by probation. The trial court then expressly

11

imposed $300 per conviction. The fine under section 1202.4, subdivision (b) is a punitive fine (see *People v. Bernal* (2002) 101 Cal.App.4th 155, 168) and the record further reflects that the trial court did not consider this a case warranting minimum punishment. The trial court's comments indicate it reached this amount by imposing $300 per conviction, not that it intended to award the $300 minimum and merely misunderstood that language of section 1202.4.

## DISPOSITION

The judgment is affirmed.

_____\s\_____,
BLEASE, Acting P.J.

We concur:

_____\s\_____,
HULL, J.

_____\s\_____,
KRAUSE, J.

12